UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BILLIE R. BANKS,

Plaintiff,

**Hon. Hugh B. Scott**

14CV970S

v.

**Order**

GENERAL MOTORS, LLC,

Defendant.

Before the Court are two motions:  (a) plaintiff's motion to compel production of certain documents and to extend the Scheduling Order (Docket No. 48) and (b) plaintiff's motion to compel the depositions of certain out of District witnesses in plaintiff's counsel's offices in this District (Docket No. 51).  Responses to the first motion were due by December 29, 2016 (Docket No. 49), which defendant provided (Docket No. 50, Def. Memo. of Law, with exhibit, Def. Atty. Decl., Docket No. 50, Ex. 1).  Replies to this motion were due by January 9, 2017 (Docket No. 49), which plaintiff supplied (Docket No. 53).  Scheduling Order (Docket No. 47) deadlines were held in abeyance pending the first motion, with the intention to amend the schedule in this Order (Docket No. 49).

For the second motion, responses were due by January 20, 2017, with argument for both motions eventually scheduled for February 1, 2017 (Docket Nos. 52, 56, 58 (minute entry for Feb. 1, 2017); see Docket Nos. 54, 55).  Defendant filed its Memorandum in opposition to this second motion to compel (Docket No. 57), with defense counsel's Declaration (id., Def. Atty.

Decl.) and attached as an exhibit the declaration of one of the putative witnesses, Patrick Curtis (id., Def. Atty. Decl. Ex. 1-A).

BACKGROUND

This is a Title VII action in which plaintiff also alleged claims under the New York State Human Rights Law (Docket No. 1, Compl).  As summarized in these motions, plaintiff claims that she was discriminated against due to her race and sex, that defendant created and permitted a hostile work environment, and retaliated against her when she complained about this discrimination (e.g., Docket No. 48, Pl. Atty. Decl. ¶ 3).  Plaintiff, an African American woman (Docket No. 1, Compl. ¶ 23), alleges that in 2006 she was employed as a Site Safety Supervisor at defendant's Lockport, New York, plant, after working in other positions at that plant since 1996 (id. ¶¶ 31-33).  She claims that she was underpaid relative to white male employees in similar positions (id. ¶ 36) and that she was subjected to different terms and conditions of employment due to her race and gender (id. ¶ 43).  From October 2002 defendant hired an investigator to follow plaintiff while she was out of work on disability (id. ¶ 44).  When plaintiff returned to work, plaintiff was accused by personnel director Jim Fennell of stealing company time by fraudulently claiming disability, which plaintiff denied.  Nevertheless, plaintiff was terminated.  (Id. ¶ 45.)  Plaintiff's medical records confirmed her disability and limitations (id. ¶ 46).  After reporting this, plaintiff was reinstated, but no punitive action was taken against Fennell (id. ¶ 47).  She alleged other instances of racial and gender discrimination (id. ¶¶ 49-55 (use of racial epithet without punishment), 56 (plaintiff's directive as Safety Supervisor being ignored by white employees), 57 (unlike white Safety Supervisors, plaintiff was never provided support staff)).

Defendant contends that plaintiff actually worked for Delphi Automotive Systems, LLC, from 1999 to 2009, a separate corporation from defendant (Docket No. 50, Def. Memo. at 2). Defendant acquired the premises of plaintiff's Lockport plant in October 2009 (Docket No. 1, Compl. ¶ 19).

Defendant answered the Complaint (Docket No. 14; <u>see</u> Docket No. 48, Pl. Atty. Decl. ¶ 4).  This case initially was referred to Magistrate Judge Foschio (Docket No. 15) who issued a Scheduling Order in which discovery was due by August 5, 2016 (Docket No. 25; <u>see</u> Docket No. 48, Pl. Atty. Decl. ¶ 5).  The case later was referred to the undersigned (Docket No. 36) due to Magistrate Judge Foschio's recusal (Docket No. 35).  The current Amended Scheduling Order (Docket No. 47) had plaintiff's expert disclosure due by December 13, 2016, defense expert disclosure by January 12, 2017, and discovery completed by March 13, 2017 (<u>id.</u>; <u>see</u> Docket No. 48, Pl. Atty. Decl. ¶¶ 18-19).  Briefing for these pending motions held these deadlines in abeyance (Docket No. 49).

Plaintiff served her discovery demands on September 10, 2015 (Docket No. 48, Pl. Atty. Decl. ¶ 7, Ex. A).  Eventually, defendant responded but plaintiff claimed that this production did not furnish responsive documents (<u>id.</u> ¶ 8, Ex. B).  Meanwhile, the parties entered into a Stipulation and Protective Order (<u>id.</u> ¶ 9; Docket No. 40).  After entry into that Stipulation, defendant produced 2,100 pages of documents in bulk; plaintiff objected to the manner of that production and defendant amended the response correlating the documents to plaintiff's requests (Docket No. 48, Pl. Atty. Decl. ¶¶ 10, 11, Ex. C).

Plaintiff then noted omissions in this production from her requests, namely absent personnel files of similarly situated employees; documents evincing findings of probable cause

to believe that defendant discriminated against its employees; manuals, handbooks, policy statements regarding human resources subjects (such as fringe benefits policies); W-2 statements, 1099 forms, and other IRS documents from 2007 for the position of Safety Supervisor; all EEO-1 reports from January 1, 2002, to present; and all claims of race or sex discrimination, hostile work environment, or retaliation lodged against defendant from the Lockport plant (id. ¶ 12, Ex. A).  Plaintiff wrote noting her objections to this production (id. ¶ 13, Ex. D).  After an exchange of correspondence, defendant supplemented its response (id. ¶ 14, Ex. E).  Plaintiff later notes "[u]nfortunately, the actual documents referenced in the response were not included and were not received until on or about August 4, 2016.  Moreover, this document production did not address all concerns of Plaintiff as set forth in her May 20, 2016 letter [id. Ex. D]" (id. ¶ 15).  In September 21, 2016, plaintiff detailed her objections to the production to date (id. ¶ 17, Ex. F).

On October 7, 2016, defendant responded, offering to produce additional documents in certain categories (id. ¶ 20, Ex. G) and served its response on October 14, 2016, noting various objections (id. ¶ 21, Ex. H).  Plaintiff notes that she received personnel records of 25 other employees but no other documents (id. ¶ 22).  As for production of additional policies and other discrimination complaints, defendant generally referred to its earlier February 2016 production (id. ¶¶ 23, 26).  As for the W-2 and other sought IRS forms, defendant said that it would produce documents from Lockport since 2009 (id. ¶ 24), as well as offering to produce EEO-1 reports as "responsive documents" (id. ¶ 25), objecting to production of documents between 2002-09 (id. Ex. H, at Response to Doc. Request No. 27, unnumbered page).

On December 5, 2016, counsel for both parties had two lengthy telephone calls about this production, later memorialized in a letter (id. ¶¶ 27, 28-32, Ex. I). Plaintiff argues the necessity and relevance of the items sought to enable her expert to render an expert report (id. ¶¶ 33-38).

*Plaintiff's Motion to Compel Document Production*

Plaintiff now seeks production of W-2 statements from comparable employees and defendant's EEO-1 reports (Docket No. 48). At oral argument on February 1, 2017, plaintiff emphasized that she sought these items for damages discovery and sought the temporal ranges requested. Defendant responded that plaintiff's requests were temporally overbroad; defendant restated its willingness to produce, but only during the period (from 2009) when it owned the Lockport plant. During that argument, plaintiff sought sworn declarations from defendant's record keepers that stated that defendant searched but could not find (or did not possess) the requested documents from before 2009.

Defendant opposes plaintiff's motion, but stated its willingness to produce documents but within a reasonable time frame (Docket No. 50, Def. Memo. at 2, 5-6). Defendant offers to produce W-2 compensation records from 2010-16 and EEO-1 from 2012-16 after defendant acquired the Lockport plant, concluding that this renders plaintiff's motion moot (id. at 5), see Obiajulu v. City of Rochester, Dep't of Law, 166 F.R.D. 293, 296 (W.D.N.Y. 1996) (Feldman, Mag. J.).

Defendant argues that it produced over 4,700 pages of documents in response to plaintiff's discovery requests (id., Ex. 1, Def. Atty. Decl. ¶ 4; Docket No. 50, Def. Memo. at 3). After defendant made its production in October 2016, defendant had not heard from plaintiff until December 5, 2016, and then plaintiff filed the first motion, on December 7, 2016 (Docket

5

No. 50, Def. Memo. Ex. 1, Def. Atty. Decl. ¶¶ 5, 6, 7).  Defendant claims that it was not given time to reconsider its position (id. ¶ 8; id., Def. Memo. at 4).

In reply, plaintiff argues that her expert cannot complete expert disclosure until the documents sought (W-2 reports, EEO-1) are produced (Docket No. 53, Pl. Reply Decl. ¶ 18). She argues that defendant failed to produce a list of policies and procedures responsive to one of plaintiff's requests, the costs of fringe benefits, and the wage information for Safety Supervisors that was promised in December 2016 (id. ¶ 6), with plaintiff concluding that defendant has no intention of producing these outstanding items (id. ¶ 7).  Defendant's only objection to producing W-2 statements and EEO-1 reports is the time range sought; plaintiff had sought these documents from 2007 to the conclusion of this action and EEO-1 reports from 2002 to conclusion (id. ¶¶ 11, 12).  Plaintiff states that she needs W-2 statements from 2007 because she believes discriminatory behavior is reflected from that date forward and EEO-1 reports for that period are needed to establish that females, African Americans and female African Americans were underrepresented in defendant's workforce (id. ¶¶ 13, 14).  The Complaint alleges that discrimination commenced on or about October 2002 and that defendant continued to do business from 1996 (id. ¶ 15; id., Pl. Reply Memo. at 2-3).  Defendant had produced records from 1986 (Docket No. 53, Pl. Atty. Reply Decl. ¶ 16, Ex. A), hence plaintiff believes defendant could produce records from the time frame requested (see id. ¶ 17; id., Pl. Reply Memo. at 3) to establish her damages (Docket No. 53, Pl. Reply Memo. at 1-2).

During oral argument, defendant contends that it did not have the records for the entire period sought by plaintiff that a predecessor corporation ran the Lockport plant.  After conferring, plaintiff insisted upon production under the sought time range or a sworn statement

6

by a records retention official with defendant confirming that the sought records are not in defendant's possession.

*Plaintiff's Motion for Extension of the Discovery Deadlines in the Scheduling Order*

Plaintiff next seeks a 90-day extension of the discovery deadlines in order to complete discovery (Docket No. 48, Pl. Atty. Decl. ¶ 39).  Defendant took no position on this motion (see Docket No. 53, Pl. Atty. Reply Decl. ¶ 20).

*Plaintiff's Motion to Compel Depositions in the Western District of New York*

On December 9, 2016, plaintiff served notices to depose nine witnesses she claims were defendant's employees as well as at least one former employee (Docket No. 51, Pl. Memo. at 2). On December 21, 2016, defendant objected to deposing Patrick Curtis, James Lally, and Lonnie Everett in Buffalo (Docket No. 51, Pl. Memo. at 2).  Defendant argues that their depositions should occur in Michigan (id.).

Plaintiff contends that those named witnesses are important to this case.  Curtis was the plant manager during plaintiff's employment and the person plaintiff (and others) complained to about instances of discrimination.  Lally was assigned to investigate plaintiff's complaints of discrimination.  Everett worked in Lockport while plaintiff worked there and was aware of complaints of discrimination.  (Id. at 3.)  She argued to defendant that the presumption that a corporate representative's deposition should occur in the defendant's principal place of business (here, Michigan) can be overcome and the location of depositions is in the discretion of the Court (id.).

Defendant responds that plaintiff noticed ten witnesses, including a former General Motors employee who resides in Indiana, four UAW employees, two employees (one of whom

employed by the UAW and not under defendant's control) who reside in Michigan, and one employee who was recently transferred to Dayton, Ohio (Docket No. 57, Def. Memo. at second, fourth and fifth unnumbered pages).  Lally is an employee residing in Michigan, Curtis is on special assignment to Ohio (Docket No. 57, Def. Memo. at second, fourth and fifth unnumbered pages; id., Def. Atty. Decl. ¶¶ 6, 7, Ex. 1-A), while Everett is a UAW employee and not employed by defendant (Docket No. 57, Def. Memo. at second, fourth and fifth unnumbered pages; id., Def. Atty. Decl. ¶¶ 5, 8).  Defense counsel offered to contact Everett to determine his availability to testify (Docket No. 57, Def. Memo. at second, fourth and fifth unnumbered pages; id., Def. Atty. Decl. ¶¶ 9, 11).  As for Curtis, he contends that he just started in Ohio on this special project, that he was recently named acting plant manager there and also is filling in as a machining area manager, concluding that travel to Buffalo for a deposition now would cause a hardship (id., Def. Atty. Decl. Ex. 1-A, Curtis Decl. ¶¶ 2-3, 5-10).  Defendant concludes that plaintiff is not entitled to attorney's fees for this motion (id., Def. Memo. at tenth unnumbered page).

During oral argument plaintiff conceded that Lonnie Everett is a union employee but plaintiff had contacted Everett and was working out means to schedule his examination in this District.  Plaintiff also noted that she is currently on disability and travel out of the District to appear during these witnesses' depositions if set outside of this District would pose a hardship.

## DISCUSSION

I.    Applicable Standards

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention.  See

8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter."  Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2007).

Federal Rule 26(b)(2)(i) allows this Court to limit the scope and means for discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive."

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an Order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention.  Fed. R. Civ. P. 37(a)(2)(A).

The location of a deposition under Rule 30(b) is solely within the discretion of this Court, Branyan v. Koninklijke Luchtvaart Maatschappij, 13 F.R.D. 425, 429 (S.D.N.Y. 1953) (Docket No. 51, Pl. Memo. at 3).  In Patton v. Ford Motor Co., No. 14CV308, 2015 U.S. Dist. LEXIS 67202, at *11 (W.D.N.Y. May 22, 2015) (Scott, Mag. J.) (Docket No. 57, Def. Memo. at sixth unnumbered page), this Court [held] that "[d]eposition of nonresident defendants, or here their corporate employees or officers, would be taken at the defendant's place of business absent plaintiff showing exceptional circumstances for holding the deposition in the forum District," citing O'Sullivan v. Rivera, 229 F.R.D. 187, 189 (D.N.M. 2004), noting that this Court "enjoys wide discretion in selecting the place of examination and the conditions for holding the

9

examination (namely, which party bears expenses), id. at *11 (citing 8A Charles A. Wright,

Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2112, at 74-75 (Civil 2d

ed. 1994)).  In Patton, this Court granted defendant Ford Motor Company a protective Order

against the deposition of a high-level human resources official and, given that disposition and the

order to have the parties work out where to depose a knowledgeable defense witness, did not

decide where the deposition of possible defense witnesses based in Michigan would be, id. at

*16-17.

Production of documents can only be for items in the responding party's "possession,

custody, or control," Fed. R. Civ. P. 34(a)(1).

Under Rule 16, a Scheduling Order "may be modified only for good cause and with the

judge's consent," Fed. R. Civ. P. 16(b)(4); see W.D.N.Y. Loc. Civ. R. 16(b)(4) ("a scheduling

order cannot be modified except by Court order").

II.      Motion for Extension of Discovery Deadlines

Given consideration of this motion, defendant's lack of opposition to the extension, and

to allow parties sufficient time to complete discovery, plaintiff's motion for extension of the

Scheduling Order is **granted**.  Good cause has been shown for a further (cf. Docket Nos. 25, 42,

47) extension of the schedule in this case and granting the 90-day period of extension sought by

plaintiff (Docket No. 48, Pl. Atty. Decl. ¶ 39; see Docket No. 53, Pl. Atty. Reply Decl. ¶ 19).

The current Scheduling Order (Docket No. 47) is amended as follows:

Discovery is to be completed by **June 12, 2017** (see Docket No. 53, Pl. Atty. Reply Decl. ¶ 19);

As a result, plaintiff's expert disclosure is now due by **April 3, 2017**; defendant's expert

disclosure is due by **May 1, 2017**;

10

Dispositive motions are to be filed by **August 11, 2017**;

Referral to Mediation, as a result, ends as of **September 8, 2017**;

If no dispositive motions are filed, the parties are to submit a status report to the undersigned (ideally in a joint report) by **September 8, 2017**.  A Status Conference will be held before the undersigned on **Wednesday, September 13, 2017, 10:30 am**, to discuss the trial readiness of this case.

III.     Plaintiff's Motion to Produce Documents

Defendant essentially argues that plaintiff's motion to compel production of documents should be denied because defendant was not given time prior to filing of the motion to reconsider its earlier objections to production (cf. Docket No. 50, Def. Atty. Decl. ¶ 8; id., Def. Memo. at 4).  Rule 37 requires the movant to certify that she had "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action," Fed. R. Civ. P. 37(a)(1).  This was done here.  Plaintiff's expert disclosure deadline was December 13, 2016 (Docket No. 47).  On plaintiff's and defendant's counsel's last call on December 5, 2016, defendant offered to produce by December 20, 2016 (Docket No. 48, Pl. Atty. Decl. ¶¶ 27, 33, Ex. I), one week after plaintiff's expert disclosure deadline.  Despite depriving defendant the opportunity to revisit its position, plaintiff had to move either to compel or to extend the Scheduling Order (or, as was actually done by plaintiff here, to request both forms of relief) and filed on December 7, 2016 (Docket No. 48).

The focus on this motion is the temporal scope of the documents she demands. Essentially, she seeks documents from the early days of her employment (namely, EEO-1 reports from 2002 and W-2s from2007) to the present (in fact through the conclusion of this action).

Defendant seeks a reasonable temporal limit to plaintiff's demands, citing this Court's decision in Obiajulu, supra, 166 F.R.D. at 296, holding that three years of ten years of employment was sufficient discovery.  In that case, Magistrate Judge Feldman exercised his discretion in finding that three years' worth of records was a reasonable amount and granted defendants' motion for a protective Order to restrict plaintiff's demands, id.

Defendant also contends that it was the successor entity and was not plaintiff's employer for the full duration of the claims at issue.  Plaintiff was employed by Delphi Automotive, working at the Lockport plant later acquired by defendant, from 2002-09.  Defendant argues that it does not have the records sought from that period prior to 2009 when General Motors acquired that plant.  But plaintiff has provided an employment record, a salary and compensation history from 1985, that was produced by defendant (Docket No. 53, Pl. Atty. Reply Decl. ¶ 16, Ex. A), even though defendant did not employ plaintiff for that entire period; that document notes plaintiff working at the Delphi Automotive Systems unit from 1996-98, but also notes that plaintiff was a "rehire" in October 2009 in the compensation history (id., Ex. A, at page 2 of 4).  Thus, both parties are correct, defendant produced records around the time period sought by plaintiff but another corporation actually employed her and there appear to be gaps in the records defendant has.  Defendant has offered to have an official swear to the scope of its records and confirm whether it had the sought documents in its possession, custody, or control, cf. Fed. R. Civ. P. 34(a)(1).  If defendant has responsive documents in its possession, custody, or control, they **shall be produced**; if not, an affidavit attesting to that fact from defendant's official **must be provided**.

The combination of the temporal scope and the fact that defendant did not employ plaintiff for part of the period sought effectively should restrict the amount of documents produced by defendant even if plaintiff's requested time period is retained.  In this case, it is reasonable to **retain the temporal scope of plaintiff's request** with the understanding that defendant is only producing what it has in its possession, custody, and control.  If some other entity has responsive documents, unless a connection is shown between defendant and that other entity, defendant is not obliged to produce.

Defendant noted during oral argument that plaintiff did not formally seek fringe benefit materials in this motion.  Plaintiff in her motion, however, mentioned that she sought manuals, handbooks, policies and procedures that were addressed to compensation and fringe benefits policies among other human resources subjects (Docket No. 48, Pl. Atty. Decl. ¶ 12, see id. ¶ 28).  She complains that absent the fringe benefit information (among other discovery sought) her expert could not render a report (id. ¶ 34).  Later, plaintiff noted that defendant conceded its obligation to produce the fringe benefit materials (Docket No. 53, Pl. Atty. Reply Decl. ¶ 11). The focus of plaintiff's motion had been other documents (W-2s and EEO-1 reports), but plaintiff did also seek the policy documents behind defendant's fringe benefits for similarly situated employees.  Defendant should not be surprised that the motion seeks fringe benefit policy materials.  Again, with the caveat if defendant (rather than the predecessor corporate employer) has such fringe benefit policy documents for the requested period **they shall be produced**.

As a result, plaintiff's initial motion to compel (Docket No. 48) is **granted** for the most part.

IV.      Plaintiff's Motion to Compel Depositions in this District, Docket No. 51

As for Everett the UAW employee, during the oral argument plaintiff's counsel announced that she had been in contact with Everett and was working on arranging his deposition, including its location.  Therefore, this Court **will not compel this deposition** at this time unless (a) plaintiff's discussions with Everett break down, (b) he is properly subpoenaed, and (c) that subpoena is challenged here.

The other non-Western New York witnesses are employees of defendant.  Curtis as plant manager at the time of plaintiff's employ and Lally as the investigator of her claims are key witnesses.  The question is whether they should be compelled to testify here or in Ohio and Michigan, respectively.  Defendant argues that there is a presumption that a deposition should occur in the state of residence (or principal place of business) of the witness which can be overcome only by a showing of factors of cost, convenience, and litigation efficiency (Docket No. 57, Def. Memo. at sixth, sixth to eighth, and eighth to tenth unnumbered pages, citing Devlin v. Transportation Commc'ns Int'l Union, No. 95 CIV. 0752 JFK JCF, 2000 WL 28173, at *3, 2000 U.S. Dist. LEXIS 264, at *8 (S.D.N.Y. Jan. 14, 2000) (Francis, Mag. J.)).  As for cost, defendant argues that plaintiff would have to depose Everett in Michigan (under a subpoena) and thus would incur the cost and inconvenience if she had to also depose Lally there as well (id. at sixth to seventh unnumbered pages).  As for litigation efficiency, defendant criticizes plaintiff's argument that a Buffalo deposition could more easily access this Court in the event of a dispute, offering that this Court could be called by telephone if necessary wherever the deposition would occur (id. at eighth unnumbered page).  These factors thus point to conducting Lally's deposition in Michigan, especially since Everett's deposition would be there.  But that presupposes that

14

plaintiff does not make an arrangement with Everett wherein he willingly comes to this District for the deposition.

As with Curtis, both sides raise inconvenience contentions for conducting his deposition. Curtis contends in effect that he is too busy to take three days (including travel to and from Dayton, Ohio) for his deposition in Buffalo; plaintiff, on the other hand, argued at oral argument that her disability physically and financially prevents her from traveling to Ohio to attend the deposition with her counsel. Curtis does not give an estimate of how long he would be required for his special assignment in Ohio or the startup time for the new plant. Unlike with Lally (or Everett), plaintiff otherwise would have no reason to go to Ohio but for this deposition.

This Court in its discretion could order these depositions to occur in one jurisdiction or the other and have the parties bear the costs of attending. But Rule 30 provides a third way, slightly more expensive in logistics and upfront costs but less expensive in travel. Rule 30(b)(4) allows (by stipulation or Order) the parties to conduct the deposition "by telephone or other remote means," with the deposition taking place where the deponent answers, Fed. R. Civ. P. 30(b)(4). A video conference or telephone deposition would have plaintiff and her counsel here while the witnesses would be in Michigan or Ohio at the added costs of setting up the remote locations for the deponents. The parties shall **arrange for the deposition of Lally and Curtis by video conference or telephone conference with the witnesses answering questions from their locations in Michigan or Ohio, respectively**. It is anticipated that defense counsel will assist in coordinating the location for Lally's examination in Michigan and assist, as much as possible, with finding a similar location for Curtis' deposition in Dayton. This method may also

be used to depose Everett, assuming plaintiff can arrange for Everett's appearance.  Each party shall bear their respective costs for conducting depositions by this method.

The timing of Curtis' deposition (wherever it occurs) is also a concern given his inconvenience contentions.  By not requiring his travel to and from Dayton, Curtis only faces the one day, seven-hour teleconference deposition, <u>see</u> Fed. R. Civ. P. 30(d)(1).  Again, Curtis did not state how long it would take for the new operations he is overseeing to get up to speed to the point he could take a day to be deposed or how long his special assignment was scheduled to last.  His deposition cannot be postponed indefinitely while he gets his work affairs in order. The Amended Scheduling Order set forth above should provide sufficient time to finish Curtis' deposition, but if not, the parties could stipulate to conduct or continue his deposition after the close of discovery set forth in this Order or plaintiff (or parties jointly) may apply for extension of the Scheduling Order in order to conduct this deposition.

Thus, plaintiff's motion to compel the deposition of these three witnesses (Docket No. 51) is **granted in part**, as stated above.

V.     Attorney's Fees

Plaintiff expressly sought attorney's fees and the recovery of her costs and disbursements for moving to hold her depositions in this District (Docket No. 51, Pl. Memo. at 7), to which defendant opposed (Docket No. 57, Def. Memo. at tenth unnumbered page).  Although plaintiff prevails in the sense that these witnesses will be deposed, technically their depositions will occur where they are questioned, either in Michigan or Ohio.  As a result, plaintiff only prevailed in part.  Under Rule 37(a)(5)(C), if a motion to compel is granted in part and denied in part, this Court "may issue any protective order authorized under Rule 26(c) and may, after giving an

16

opportunity to be heard, apportion the reasonable expenses for the motion." This Court is inclined to **have the parties bear their respective motion costs for this motion**. Pursuant to Rule 37(a)(5)(C), the parties are to be heard on whether to award motion expenses; these positions are due **seven (7) days from entry of this Order**, or by **February 21, 2017** (factoring in the federal holiday).

Plaintiff did not expressly seek to recover her expenses for the first motion to compel (Docket No. 48). Similarly, plaintiff prevailed in most part, but the caveats about defendant actually possessing the records sought place that motion in the same posture as the motion compelling deposition of the Michigan and Ohio witnesses. Again, this Court is inclined to have the parties bear their own costs. Alternatively, under Rule 37(a)(5)(A) when a movant is granted relief, this Court may not order payment of the movant's motion expenses if the nondisclosure, response, or objection is substantially justified or if other circumstances make an award unjust, Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii). Defendant's justification and objection to this production (that plaintiff sought documents from a period in which defendant did not employ her and hence may not have the materials desired) if true is sufficient justification for not producing and would not warrant imposing plaintiff's motion costs upon defendant.

CONCLUSION

For the reasons stated above, plaintiff's motion (Docket No. 48) to extend the Scheduling Order (Docket No. 47) is **granted** with the amended Schedule stated above (at page 11 supra). Her motion (Docket No. 48) to compel production of documents is **granted**. Plaintiff's motion to compel depositions in this District (Docket No. 51) is **granted in part** (as discussed in detail

17

above).  The parties may submit their view on whether motion expenses should be awarded and

should file them with **seven (7) days of entry of this Order**, or by **February 21, 2017**.

So Ordered.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
       February 13, 2017

18