UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BILLIE R. BANKS,

                Plaintiff,

                                                                                                        **Hon. Hugh B. Scott**

                                                                                                                    14CV970S

                v.

                                                                                                                    **Order**

GENERAL MOTORS, LLC,

                Defendant.

      Before the Court is plaintiff's third (cf. Docket Nos. 48, 51 (motions to compel); Docket No. 59 (Order)) motion to compel (Docket No. 65). Responses to this motion were due by June 29, 2017, with replies due July 6, 2017 (Docket No. 66). Defendant filed a timely response (Docket No. 70) and plaintiff duly replied (Docket No. 71), and the motion was deemed submitted.

      Meanwhile, the Scheduling Order (Docket Nos. 59, 63) had discovery conclude by June 26, 2017; this Court later recognized that this deadline would need to be changed due to the pending motion to compel (Docket No. 66). The parties then moved jointly to extend time to conduct depositions (Docket No. 67), which was granted (Docket No. 68). Discovery then was due by July 14, 2017, again with this Court providing that this deadline may be extended further upon action on the pending motion to compel (Docket No. 69).

BACKGROUND

This is a Title VII action in which plaintiff also alleged claims under the New York State Human Rights Law (Docket No. 1, Compl). As summarized in a prior series of motions (Docket No. 48, Pl. Atty. Decl. ¶ 3; Docket No. 59, Order of Feb. 13, 2017, at 2), plaintiff claims that she was discriminated against due to her race and sex, that defendant created and permitted a hostile work environment, and retaliated against her when she complained about this discrimination (e.g., Docket No. 48, Pl. Atty. Decl. ¶ 3). Plaintiff, an African American woman (Docket No. 1, Compl. ¶ 23), alleges that in 2006 she was employed as a Site Safety Supervisor at defendant's Lockport, New York, plant, after working in other positions at that plant since 1996 (id. ¶¶ 31-33). She claims that she was underpaid relative to white male employees in similar positions (id. ¶ 36) and that she was subjected to different terms and conditions of employment due to her race and gender (id. ¶ 43). From October 2002 defendant hired an investigator to follow plaintiff while she was out of work on disability (id. ¶ 44). When plaintiff returned to work, plaintiff was accused by personnel director Jim Fennell of stealing company time by fraudulently claiming disability, which plaintiff denied. Nevertheless, plaintiff was terminated. (Id. ¶ 45.) Plaintiff's medical records confirmed her disability and limitations (id. ¶ 46). After reporting this, plaintiff was reinstated, but no punitive action was taken against Fennell (id. ¶ 47). She alleged other instances of racial and gender discrimination (id. ¶¶ 49-55 (use of racial epithet without punishment), 56 (plaintiff's directive as Safety Supervisor being ignored by white employees), 57 (unlike white Safety Supervisors, plaintiff was never provided support staff)).

Defendant contends that plaintiff actually worked for Delphi Automotive Systems, LLC, from 1999 to 2009, a separate corporation from defendant (Docket No. 50, Def. Memo. at 2).

Plaintiff notes, however, that, while defendant claimed that it had no access to personnel records before 2009, defendant later produced pre-2009 records (Docket No. 65, Pl. Atty. Decl. ¶ 30). Defendant acquired the premises of plaintiff's Lockport plant in October 2009 (Docket No. 1, Compl. ¶ 19). Defendant answered the Complaint (Docket No. 14; see Docket No. 48, Pl. Atty. Decl. ¶ 4).

This case initially was referred to Magistrate Judge Foschio (Docket No. 15) who issued a Scheduling Order in which discovery was due by August 5, 2016 (Docket No. 25; see Docket No. 48, Pl. Atty. Decl. ¶ 5). The case later was referred to the undersigned (Docket No. 36) due to Magistrate Judge Foschio's recusal (Docket No. 35).

Previously, plaintiff moved to compel production of certain documents (Docket No. 48; see Docket No. 65, Pl. Atty. Decl. ¶ 12), which was granted (Docket No. 59, Order of Feb. 13, 2017; see Docket No. 65, Pl. Atty. Decl. ¶ 14) and for conducting depositions of defendant's personnel in this District (Docket No. 51) which was granted in part, denied in part (Docket No. 59, Order, at 14-16). That Order also set the amended schedule for pretrial activities in this case (id. at 10-11), which was later extended (Docket Nos. 63-64, 68-69).

*Plaintiff's Latest Motion to Compel*

Plaintiff seeks complete responses to her Request for Production of Documents and desires leave to resume the deposition of seven General Motors personnel[1] at defendant's expense (Docket No. 65, Pl. Notice of Motion). Plaintiff notes that three of these witnesses had yet to be deposed as of the date of the filing of this motion (Docket No. 65, Pl. Atty. Decl. ¶ 27 (Daniel Hersch, Pat Curtis, and retired human resources manager James Fennell yet to be

---

[1]George Miller, Tom Rush, Susan Gouthro, Robert Duke, Michael Moresco, Daniel Hesch, and Pat Curtis, Docket No. 65, Pl. Notice of Motion. Miller is a UAW employee, Docket No. 70, Def. Memo. at 10 n.3; cf. Docket No. 65, Pl. Atty. Decl. ¶ 21.

3

deposed)), with their depositions scheduled in June (id. ¶ 28). Plaintiff claims that defendant deliberately failed to produce documents or produced them the afternoon or evening before an employee's deposition, prejudicing her preparation for the depositions (id. ¶ 31). Since defendant failed to produce personnel files of these (and other) witnesses and General Motors employees, plaintiff seeks production of the documents and leave to conduct further depositions, if necessary, at defense expense (id. ¶ 32).

Plaintiff acknowledges that defendant produced approximately 2,100 pages of documents (id. ¶¶ 8, 9 (later correlating these documents to plaintiff's requests, following plaintiff's objection to bulk production of these documents)). The parties then agreed that defendant would produce personnel documents for 25 General Motors employees (id. ¶ 10, Ex. D). As depositions of some of these employees approached, plaintiff sought from defendant complete personnel files (id. ¶¶ 15-16-17, 18- 19, Exs. F, G, H). After conducting employee depositions in April and May of 2017 (id. ¶ 20), plaintiff again listed documents yet to be produced by defendant (id. ¶ 21, Ex. J, letter of May 18, 2017). Defendant on May 19 and 24, 2017, produced portions of the personnel records of Lonnie Everett and Mike Moresco and documents about the posting of plaintiff's former position (id. ¶¶ 22-23, 24). Moresco, who was assisting defense counsel in obtaining other employees' records, testified at his deposition that he was not asked to produce his own files (id. ¶¶ 18, 25, Ex. K). Plaintiff claims that since May 26, 2017, defendant has failed to produce responsive documents (id. ¶ 26, see id. Ex. K).

Defendant responds that, despite objections that plaintiff's requests for the personnel files of 45 General Motors' employees was overly broad, defendant produced copies of the files of 27 employees (Docket No. 70, Def. Memo. at 2-3, 4), while retaining objections as to

4

overbreadth for certain employees' files (id. at 4). Performance evaluations and training records were not part of the personnel files so, upon plaintiff's objection during a deposition, defendant separately produced performance evaluations or was obtaining for production other evaluations (mostly for employees called as witnesses) (id. at 3) where such records were available (id. at 7). Defendant claims that these evaluations and training records were produced prior to plaintiff's depositions (id. at 3). One employee, Dan Hesch, was noticed for deposition eight business days before the examination; defendant argues that it did not have enough time to obtain all of his records (id.). Defendant concludes that, by either its production or objection, that plaintiff's present motion to compel is now moot (id. at 5). It contends that plaintiff's motion boils down to (a) whether she is entitled to performance evaluations and training records for sixteen General Motors employees[2] whom defendant deems are not relevant to this action and (b) whether plaintiff is entitled to resume depositions of seven General Motors employees at defendant's expense (id.). Defendant argues that plaintiff is not entitled to those evaluations and records or to further depositions (id. at 4, 5, 7-9, 10-11). Defendant invokes this Court's discretion regarding production of non-party personnel files (id. at 6 & n.2 (applying cited precedent, although cases applied New York Civil Rights Law § 50-a)), Sidari v. Orleans County, 180 F.R.D. 226, 231-32 (W.D.N.Y. 1997) (Scott, Mag. J.); Gavenda v. Orleans County, 174 F.R.D. 265, 268-69 (W.D.N.Y. 1996) (Scott, Mag. J.).

Defendant argues that plaintiff fails to show relevance of the performance evaluations of the named employees (id. at 8) or how the requested information is not more than a fishing expedition (id. at 9). Plaintiff had used performance evaluations only to impeach and discredit

---

[2] Roy Knapp, Make Arter, Ellen Welker, Jim Hereth, Mark Reineke, Al Burch, Greg Conley, Melissa Patterson, Al Hayden, Charlie Mosher, Darvan Draper, Dennis Gilbert, Kelly Sears, Hillie LaDue, Jim Lally, and John Marcum, Docket No. 70, Def. Memo. at 4.

witnesses (id. at 10). Defendant next states that the specific requests plaintiff sought did not exist or were already produced (id. at 9). Defendant concludes that plaintiff failed to show how these performance evaluations warrants an order to allow additional deposition (id. at 11).

Defendant denies that plaintiff was prejudiced by the afternoon or evening production of performance evaluation prior to depositions because defendant deems those documents to be marginally relevant (id. at 10). Personnel documents for five witnesses (Tom Rush, Susan Gouthro, Robert Duke, Daniel Hesch, and George Miller) were produced back in October 2016 (id.).

Defendant concludes that plaintiff is not entitled to costs for her motion (id. at 11-12).

Plaintiff, in reply (Docket No. 71), argues that personnel records of similarly situated employees to a plaintiff, supervisors of a plaintiff, and individuals involved in discriminatory behavior is discoverable (id. at 1-2), Barella v. Village of Freeport, 296 F.R.D. 102, 106 (E.D.N.Y. 2013). She distinguished the cases defendant cites that personnel records need not be produced (id. at 2). She notes the defendant did not raise any confidentiality concerns and points to the parties' Stipulation and Protective Order concerning disclosure in this case (id.; see Docket No. 34, Stipulation and Order). Plaintiff argues that there is no viable reason for failure to produce these documents, denying that production is overly broad or unduly burdensome. She claims the employees' performance evaluations and training records were relevant "to demonstrate disparate treatment between those who discriminate, or permit discrimination to occur, and those who are subject to discrimination" (Docket No. 71, Pl. Reply Memo. at 4). She still seeks the witnesses' disciplinary record, arguing that these items also are relevant (id.). Plaintiff also wants an affidavit from an employee of defendant attesting to what was produced

6

and what was not found, despite defense counsel's representation of what had been produced (id. at 6-7). In the event documents produced by defendant on June 30, 2017, or subsequently lead to additional lines of questioning, plaintiff seeks leave to conduct further depositions of Miller, Rush, Gouthro, Duke, Moresco, Hesch, and Curtis, at defendant's expense (id. at 8), citing e.g., Adames v. G.B. Restaurants Inc., No. 12CV569, 2014 WL 202380, at *5-6, 2014 U.S. Dist. LEXIS 5866, at *14-18 (W.D.N.Y. Jan. 16, 2014) (Scott, Mag. J.).

To understand the discovery issues involving the various deposed General Motors' employees, below is a table of plaintiff's contentions and defendant's response. The first table lists the seven employees plaintiff seeks to continue their depositions following receipt of additional documents and defendant's position.

Table 1

| GM Employee's Name | Plaintiff, No. 65 | Defendant, No. 70 |
|---|---|---|
| George Miller | seeking additional documents ¶ 21 | Deposed as of June 28, at 4. UAW employee, without General Motors evaluation, at 10 n.3. Produced documents October 2016, at 10. |
| Tom Rush | seeking additional documents ¶ 21; alleged harasser | Deposed as of June 28, at 4. Produced documents Oct. 2016, at 10. |
| Susan Gouthro | seeking additional documents ¶ 21 | Deposed as of June 28, at 4. Produced documents Oct. 2016, at 10. |
| Robert Duke | seeking additional documents ¶ 21, documents regarding posting of position and hiring of Duke, ¶ 24; hired to replace plaintiff | Deposed as of June 28, at 4. Produced documents Oct. 2016, at 10. |
| Michael Moresco | seeking additional documents ¶ 21. Evaluations received from 2009-16, ¶ 23. Testified that he was never asked to pull his own personnel file, ¶ 25, Ex. K (email objection) | Deposed as of June 28, at 4. Produced documents April 21, 2017, at 10. |

7

| | | |
|---|---|---|
| | seeking additional documents, ¶¶ 21, 28 (nothing after 2008); assistant plant manager. Needs to be deposed, ¶¶ 27-28, scheduled for June 8, 2017 (June 7 motion), | |
| Daniel Hesch | ¶ 28 | Deposed as of June 28, at 4. Produced documents Oct. 2016, at 10. |
| | seeking additional documents, former plant manager, ¶¶ 21, 28, needs to be deposed, ¶ 27, scheduled for June 12 (June 7 | |
| Pat Curtis | motion), ¶ 28 | No disciplinary records, at 7. |

## DISCUSSION

I.  Applicable Standards

As previously discussed (Docket No. 59, Order at 8-9), Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention. See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2007). Federal Rule 26(b)(2)(i) allows this Court to limit the scope and means for discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an Order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A).

8

II.   Plaintiff's Motion to Compel

   A.   Document Production

      1.   Sixteen General Motors Employees

The next table lists the sixteen witnesses plaintiff also sought additional documents.

Table 2

| GM Employee's Name | Pl. No. 65, Atty. Decl. | Def. No. 70 |
|---|---|---|
| Roy Knapp | role not specified ¶ 21 | |
| Mike Arter | role not specified ¶ 21 | |
| Ellen Welker | role not specified ¶ 21 | |
| Jim Hereth | role not specified ¶ 21 | No disciplinary records exist, at 7 |
| Mark Reineke | role not specified ¶ 21 | |
| Al Burch | African-American employee who complains of discrimination, ¶ 21 | |
| Greg Conley | role not specified ¶ 21 | |
| Melissa Patterson | role not specified ¶ 21 | |
| Al Hayden | role not specified ¶ 21 | |
| Charlie Mosher | alleged harasser, ¶ 21 | |
| Darvan Draper | role not specified ¶ 21 | No disciplinary records exist, at 7 |
| Dennis Gilbert | role not specified ¶ 21 | |
| Kelly Sears | role not specified ¶ 21 | |
| Hillie LaDue | role not specified ¶ 21 | Hilda LaDue |
| Jim Lally | investigator of plaintiff's complaints, ¶ 21 | No disciplinary records exist, at 7 |
| John Marcum | role not specified ¶ 21 | No disciplinary records exist, at 7 |

As noted in the table, plaintiff did not state the role of the employee witnesses that would make their performance evaluations relevant to her claims. In her reply, plaintiff claims that these employees are similarly situated, have been victims or perpetrators of discrimination, or members of management (Docket No. 71, Pl. Reply Memo. at 3).

9

Defendant cites to cases that involve New York Civil Rights Law § 50-a as a basis for privilege against producing non-party personnel records (Docket No. 70, Def. Memo. at 6 & n.2). But those cases involved public sector employers, Sidari, supra, 180 F.R.D. 226; Gavenda, supra, 174 F.R.D. 265; cf. Johnson v. Riverhead Cent. Sch. Dist., No. CV14-7130(DRH)(AKT), 2016 WL 4507002, at *8-9 (E.D.N.Y. Aug. 26, 2016) (denying plaintiff's motion to compel where plaintiff held to have not shown relevance of personnel records, without citing New York Civil Rights Law), and the Civil Rights Law § 50-a involves personnel records of police officers, firefighters, and corrections officers, N.Y. Civ. Rights Law § 50-a (see also Docket No. 71, Pl. Reply Memo. at 2). Here, defendant is seeking to preclude disclosure of personnel records for an automobile manufacturer. The Northern District of New York case which applied this rationale outside of the public sector context, Palmer v. New York State Office of Court Admin., No. 5:00-CV-0110(FJS/GHL), 2009 WL 1118271, at *1, 2009 U.S. Dist. LEXIS 35714 (N.D.N.Y. Apr. 27, 2009), itself was a public sector action (although it did not involve police officers, firefighters, or corrections officers; plaintiff there was a court reporter seeking personnel records of other court reporters). So the evidentiary privilege under New York Civil Rights Law § 50-a is not applicable here.

The issue then is under Rule 26 and whether the personnel records (specifically their performance evaluations and training records) of these employees are relevant to plaintiff's claims. The Northern District of New York, in Palmer, supra, 2009 WL 1118271, at *1, noted that

> "Employment discrimination plaintiffs often seek personnel records of employees not directly involved in the suit in order to develop information needed to make a comparison between the employment situations of those employees and those of the plaintiff. However, the required production during pretrial discovery of

10

>personnel records of non-party employees—which records invariably contain sensitive medical, financial and other information of a highly personal nature—is not generally favored,"

id. at *1 & n.1 (citing, e.g., Sidari, supra, 180 F.R.D. at 231-32; Gavenda, supra, 174 F.R.D. at 268-69; Grady v. Affiliated Central, Inc., 130 F.3d 553, 561 (2d Cir. 1997) (affirming denial of plaintiff's motion to compel production of employees' telephone numbers as being minimally relevant)). Thus, plaintiff needs to show some relevance of the coworkers' personnel files to her claims.

Plaintiff contends that the performance evaluations are relevant because they show "disparate treatment between those who discriminate, or permit discrimination to occur, and those who are subject to discrimination" (Docket No. 71, Pl. Reply Memo. at 4), while training records shows the training (or lack thereof) of these employees (id.) who are either similar to plaintiff; those who engaged in discriminatory practices, or were supervisory personnel charged with stopping such practices (id. at 3).

Relevance has two aspects here. First is the relevance of the categories of documents sought, which plaintiff discusses. The second is the relevance of the employees identified to have their records produced. Plaintiff only makes the categorical statement that those named are either similar to her or were her supervisors or allegedly were her victimizers. Plaintiff fails to identify generally which of the witness employees falls in any of these categories, precluding a witness-by-witness determination whether performance evaluations or training (or portions thereof) should or should not be produced for a given witness employee. Plaintiff alleges that she endured different terms and conditions of employment than similarly situated employees (Docket No. 1, Compl. ¶ 43). One aspect of that claim may be seen in performance evaluations,

11

but that would apply only to those employee witnesses who were similarly situated and not necessarily to either supervisory witnesses or alleged discriminators. Therefore, plaintiff's motion to compel production of these witnesses' performance evaluations is only **granted in part** and only as to similarly situated employees and not others (such as Charlie Mosher, alleged harasser, or Jim Lally, management representative who investigated plaintiff's claims).

As for the training records of all of these employee witnesses, their training (regardless of the three categories plaintiff divides them into) is relevant to her claims. For management and alleged harassers, the training shows what they should know and how they should act; for the similarly situated employees, their training shows whether they were educated in the same human resources concepts as plaintiff was. As for the last category of employees, the differences in training may also be a different term or condition of employment claimed in plaintiff's action. Thus, plaintiff's motion to compel production of these documents is **granted**.

Plaintiff also seeks the disciplinary records of the witness employees. Defendant contends that some of the employees (see table 2 above) had no disciplinary record. Defendant can only produce documents that exist and are in its possession, custody, and control, see Fed. R. Civ. P. 34(a)(1). Where defendant has not produced existing disciplinary records for these sixteen witnesses, defendant **is to produce those records**; plaintiff's motion (Docket No. 65) to compel their production is **granted**.

    2.    Miller and Six General Motors Witnesses Sought to Be Deposed

Plaintiff also seeks additional documents than what was produced by defendant for the seven employees (including UAW employee Miller) she wishes to depose again (Docket No. 65, Pl. Atty. Decl. ¶ 21). Defense counsel claims that defendant produced "complete personnel files

12

(as well as disciplinary documents)" for these witnesses (Docket No. 70, Def. Atty. Decl. ¶ 11). Defendant's attorney also states that what has been produced and what records exist (id. ¶¶ 18-27; see Docket No. 71, Pl. Reply Memo. at 6-7), but plaintiff insists on a sworn statement from a representative of defendant confirming what was produced and what was available to be produced (Docket No. 71, Pl. Reply Memo. at 7-8). An affidavit from person or persons knowledgeable of defendant's personnel records **should provide an affidavit** confirming what exists, what was produced, and that due diligence was performed looking for the documents sought by plaintiff (see also Docket No. 59, Order at 12). Defendant, however, did not indicate that the performance evaluations and training records for these persons were produced, despite distinguishing "personnel records" from "performance evaluations" and training (see Docket No. 70, Def. Memo. at 3).

As held above for the sixteen employees plaintiff sought additional personnel records, plaintiff **is entitled to performance evaluations and training records for similarly situated employees of the six General Motors employees**. Since George Miller is a UAW employee, unless plaintiff establishes that he was similarly situated to her, she **is not entitled to production of his performance evaluations or training records** (cf. Docket No. 70, Def. Memo. at 10 n.3). Thus, plaintiff's motion (Docket No. 65) to compel production of these records is **granted in part, denied in part**.

B.   Resumed Depositions

Plaintiff wants leave to further examine these witnesses in the event documents she received on June 30, 2017, and based upon whatever she may find in the documents she seeks produced from defendant reveal lines of questioning that should be pursued (Docket No. 71, Pl.

13

Reply Memo. of July 6, 2017, at 8).  First, it is unclear whether plaintiff was required to reopen the depositions of other witnesses once she obtained the witnesses' performance evaluation, training, and disciplinary records.  As for the documents received on June 30 for these seven witnesses, plaintiff has not stated that she either reviewed those documents or identified examples of new lines of questioning that should proceed from an initial review of this latest production.  Plaintiff had roughly a week (which included a long holiday weekend) to begin review of the June 30 production to determine which avenues of inquiry could be done if leave to depose were granted.  This Court is not aware of the lines of inquiry plaintiff would have asked these witnesses had their entire personnel records (including training, evaluations, and disciplinary records) were provided prior to the examination.  Discovery, again, is to provide material relevant to a claim "and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1).  While continued questioning of these employees may discern material for cross-examination they may not lead to material relevant to plaintiff's claims.  Resuming these witnesses' depositions appears to be a fishing expedition to undermine the witnesses' credibility rather than learn of facts for plaintiffs' claim.

Plaintiff's motion (Docket No. 65) for leave to reopen depositions of these witnesses is **denied**.

      C.    Which Party Bears Costs of Resumed Depositions

Plaintiff previously moved to depose Patrick Curtis and two other General Motors employees in this District (Docket No. 51), but this Court modified, holding that Curtis could be deposed but by video conference (Docket No. 59, Order at 15).  This Court held that each party was to bear its respective costs for conducting the video deposition (id. at 16).

Plaintiff now moves for defendant to bear the costs for continued depositions (Docket No. 65) if they are conducted (see Docket No. 71, Pl. Reply Memo. at 8). She argues that since defendant withheld the documents (or supplied them at the eleventh hour before a deposition) that a subsequent renewal of these depositions should be at defendant's expense (Docket No. 71, Pl. Reply Memo. at 8). In support of that position, she cites Adames, supra, 2014 WL 202380, at *5-6, 2014 U.S. Dist. LEXIS 5866, at *14-18, in which this Court found that conducting supplemental depositions in that case would not have occurred but for defendants failure to produce certain training documents before, id., 2014 U.S. Dist. LEXIS 5866, at *20-21. The supplemental depositions arose there because defendants failed to produce documents, id. at *11, and the recovery of plaintiffs' costs in re-deposing witnesses was considered as a discovery sanction since defendants delayed in producing documents, with plaintiffs' counsel stating that they would seek a contempt Order for fees and expenses for a second trip to depose, id. at *12-13, 16-17.

In the other cases cited by plaintiff (Docket No. 71, Pl. Reply Memo. at 8), in Caputi v. Topper Realty Corp., No. 14-CV-2634 (JFB)(SIL), 2015 WL 2453520, at *8, 2015 U.S. Dist. LEXIS 67050, at *1, 17-21 (E.D.N.Y. May 22, 2015) (Locke, Mag. J.), defendants sought a sanction for plaintiff's failure to produce documents imposition of the costs of the stenographer for continuing her deposition. Magistrate Judge Locke denied imposing the stenographer's fee, finding that plaintiff failed to cite any authority for imposition of that obligation, stating that "while Fed. R. Civ. P. 30(d)(2) confers discretion on the Court to impose a sanction, including reasonable expenses and attorneys' fees, on any person who impedes, delays, or frustrates the fair examination of a deponent, the Court finds no basis for doing so here," id., 2015 U.S. Dist.

LEXIS 67050, at *20-21. In M.L.C., Inc. v. North Am. Philips Corp., 109 F.R.D. 134 (S.D.N.Y. 1986), the defendant was sanctioned for failure to produce documents, ordering reopening discovery and depositions with the parties splitting the costs of the renewed depositions, id. at 142.

Defendant counters that plaintiff seeks an overly broad, burdensome, and irrelevant inquiry in seeking personnel records (broadly defined) for 45 General Motors employees (as well as at least 1 UAW employee, Miller) where this inquiry was not limited to the issues in this case (Docket No. 70, Def. Memo. at 11-12). Defendant concludes that plaintiff is not entitled to recover costs for this motion, either in general or the costs of conducting resumed depositions (id.).

Given the discretion this Court has in awarding sanctions for failure to produce, if plaintiff were allowed to resume these depositions, this Court would agree with the procedure used in M.L.C., with the parties bearing their own respective costs rather than imposing the costs solely upon defendant. But, as just held above, plaintiff's motion (Docket No. 65) for leave to reopen those depositions was denied; as a result, her motion to recover the costs for those renewed examinations is **denied**.

III.     Reasonable Motion Expenses

Under Rule 37, the successful party may receive its costs for filing (or defending a denied) motion to compel, Fed. R. Civ. P. 37(a)(5)(A), (B). But if the motion to compel is granted in part and denied in part, as was done here (where plaintiff only obtained some of the documentary production she sought and was denied renewed depositions), the Court may issue

16

an appropriate protective Order and, "after giving an opportunity to be heard, apportion the reasonable expenses for the motion," Fed. R. Civ. P. 37(a)(5)(C).

To allow time for any objection to this Order, see Fed. R. Civ. P. 72(a), the fee applications are due fourteen (14) days from entry of this Order. Opponent's response to the fee applications is due twenty-one (21) days from entry of this Order. Any fee application will be deemed submitted after that twenty-one days without oral argument (unless scheduled by this Court after review of the application). Any application should include the expenses claimed by the applicant (including attorney's fee, time expended by counsel, rate counsel is charging, and years of practice and federal experience of counsel). Parties also should address whether imposition of motion cost recovery is justified under Rule 37 or whether the failure to produce the sought items was somehow justified, see Fed. R. Civ. P. 37(a)(5).

IV.     Amended Scheduling Order

Given resolution of plaintiff's latest motion to compel and to allow time for the parties to complete discovery provided for herein as well as any other outstanding discovery, the discovery deadline (and subsequent deadlines) will be reset. The Third Amended Scheduling Order (Docket No. 59), as amended (Docket Nos. 63, 66) is amended as follows:

FOURTH AMENDED SCHEDULING ORDER

Motions to compel discovery are due by **September 29, 2017**;

Discovery (including expert disclosure) completed by **October 30, 2017**;

Dispositive motions now due by **January 30, 2018**;

Referral to mediation ends by **February 9, 2018**;

If no dispositive motions are filed, a Status Report is due by **February 28, 2018**, to the undersigned. A Status Conference is set for **Wednesday, March 7, 2018, at 10:15 am**, before the undersigned.

## CONCLUSION

For the reasons stated above, plaintiff's motion (Docket No. 65) to compel is **granted in part, denied in part** as specified herein. The fee applications are due fourteen (14) days from entry of this Order. Opponent's response to this application is due twenty-one (21) days from entry of this Order. The applications will be deemed submitted without oral argument (unless argument is subsequently scheduled by this Court following review of the application and opposing papers).

The Third Amended Scheduling Order (Docket Nos. 63, 66) is amended as outlined above.

So Ordered.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        July 26, 2017

18